FILED

2011 Oct-24  PM 03:57
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **BILL GEORGE,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| **vs.** | ) | Civil Action Number |
| | ) | **2:10-cv-3389-AKK** |
| **COUNTY OF JEFFERSON, et al.,** | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Before the court are Motions to Dismiss Bill George's ("Plaintiff") Second Amended Complaint by the City of Hueytown, doc. 56, Hueytown Police Officer Brent Akin ("Akin"), doc. 58, Jefferson County Sheriff Mike Hale ("Sheriff Hale"), doc. 63, and Jefferson County Corrections Officer Cynthia Davis ("Davis"), doc. 64. Also before the court are Plaintiff's Motions to Strike portions of Sheriff Hale and Davis' Reply Briefs, docs. 70, 71.

## I.    PROCEDURAL AND FACTUAL BACKGROUND

In his Second Amended Complaint, Plaintiff alleges claims against the City of Hueytown and Sheriff Hale, in his official capacity, for violations of 42 U.S.C. § 1983, Title II of the American with Disabilities Act ("ADA"), and the

1

Rehabilitation Act.  Doc. 55 ¶¶ 36, 43.  Plaintiff brings claims against Davis, Akin, and Jefferson County Corrections Division nurse Karen Fowler ("Fowler") in their individual capacities under § 1983.  *Id.* ¶ 43.  Plaintiff seeks both money damages and injunctive relief.  *Id.* at 17.  The City of Hueytown, Sheriff Hale, Davis, and Akin filed motions to dismiss.  Docs. 56, 58, 63, 64.  Plaintiff responded, docs. 62, 65, 66, and Sheriff Hale and Officer Davis replied, docs. 68, 69.  Plaintiff moved to strike portions of the reply briefs submitted by Sheriff Hale and Davis.  Docs. 70, 71.

For consideration of these motions, the court accepts as true Plaintiff's factual allegations.  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009).  Plaintiff is disabled and suffers from numerous medical conditions including "Gran Mal seizures, colon cancer, asbestosis, and degenerative disk disease."  Doc. 55 ¶ 10.  These conditions substantially limit Plaintiff's capabilities and major bodily functions resulting in the need "to take a number of medications including Klonapin, a medication which controls his seizures, Methadone, and other narcotics for chronic pain related to his various conditions."  *Id.*  Plaintiff is required to carry these prescription medications with him at all times, and due to their large containers, he often travels with the medications outside of the prescription bottles.  *Id.* ¶¶ 11-12.  In 2009 Plaintiff plead guilty to possession of a

2

controlled substance which arose from Plaintiff not carrying his medications in their prescription bottles.  The sentenced included a suspension of Plaintiff's drivers license.  *Id.* ¶ 13.

On October 11, 2009, Officer Akin pulled Plaintiff over for a traffic violation.  During the traffic stop, Akin found Plaintiff's medications outside of the prescription bottles, but then Akin accompanied Plaintiff's daughter to Plaintiff's home where he received the prescription information.  Akin returned to the scene of the traffic stop, seized the medications found in Plaintiff's car, and arrested Plaintiff for driving on a suspended license.  *Id.* ¶¶ 14-16.

Akin took Plaintiff to the Hueytown City Police Station and called for a transport to the Jefferson County Jail.  Although  Plaintiff revealed to Akin and others present that he needed his prescription medications or would experience uncontrollable seizures, the prescription medications were confiscated at the Hueytown police station.  *Id.* ¶ 17.  During his booking at the Jefferson County Jail, Plaintiff again told the booking officer about his disabilities, his need for medication, and the potential effects of not receiving his medications - namely that he would experience uncontrollable seizures.  Plaintiff also told the booking officer about an existing staph infection that required antibiotics.  *Id.* ¶ 18.  The booking officer informed Plaintiff that they would "detox" him and that "jail regulations

prohibited him from being provided with opiates or methadone." *Id.* ¶ 19.  The

Jefferson County Corrections website provides that family members may not bring

prescriptions to inmates and that prescriptions will be made by the jail's physician.

*Id.* ¶ 20.

On the morning of October 13, 2011, Plaintiff experienced symptoms of

methadone withdrawal and could not get out of bed.  Jefferson County corrections

officers, including Officer Davis, threatened to taser Plaintiff, but due to the

assistance of another inmate, Plaintiff was able to get out of bed.  Plaintiff told

these officers, including Davis, that he needed his medications or he would

experience uncontrollable seizures.  Plaintiff only received Tylenol and Livium

even after telling the Jail's nurse his need for Klonapin and Methadone to prevent

seizures.  As a result, Plaintiff began to experience gran mal seizures "on or

around" October 13, 2009.  *Id.* ¶¶ 22-24.

During one such seizure, Plaintiff lost consciousness, but fellow detainees

subsequently told Plaintiff that corrections officers, including Davis, threatened to

taser him again and "failed to obtain medical treatment for" him.  *Id.* ¶ 25.  Plaintiff

continued to experience gran mal seizures and was unable "to use the toilet, bathe

himself, or otherwise tend to his personal needs or personal sanitation."  *Id.* ¶ 26.

Eventually, corrections officers, including Davis, isolated Plaintiff and kept him in

solitary confinement for 24 hours in "a bare room with a non-functioning and unsanitary toilet, a metal bedstead with no mattress, and no blankets." *Id.* ¶¶ 27-28.

Plaintiff continued to experience gran mal seizures and "[a]t one point was shackled to a gurney by corrections officers, included Officer Davis." *Id.* ¶ 30. These shackles "caused large lacerations and burst vessels on both ankles." *Id.* While detained in the Jefferson County Jail, corrections officers, including Davis, also observed Plaintiff's staph infection. *Id.* ¶ 31. In addition to what they observed, the Jefferson County Jail had knowledge of Plaintiff's need for medication from Plaintiff's daughter who specifically contacted the jail. However, Nurse Fowler informed Plaintiff's daughter "that her father was receiving all of his prescription medications and all appropriate medical treatment." *Id.* ¶ 29.

Ultimately, Plaintiff was detained for eleven days in the Jefferson County Jail. On October 22, 2009, Plaintiff lost, and failed to regain, consciousness after a gran mal seizure. Officials transported him to Cooper Green Hospital where he entered into Intensive Care. Plaintiff's daughter located Plaintiff at Cooper Green Hospital, and Plaintiff was discharged against doctor's advice on October 25, 2009. *Id.* at ¶¶ 32-34. Apparently Defendants did not require Plaintiff to return to the Jefferson County Jail upon his release from Cooper Green Hospital.

## II.   APPLICABLE STANDARDS

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient.  *Iqbal*, 129 S. Ct. at 1949 (citations and internal quotation marks omitted).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* at 1949 (citing *Bell Atl. Corp.*, 550 U.S. at 557).

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when a complaint fails to state a claim upon which relief can be granted.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Iqbal*, 129 S. Ct. at 1949 (citations and internal quotation marks omitted).  A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citation omitted).  The complaint must establish "more

6

than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Bell Atl. Corp.*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). Ultimately, this inquiry is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950.

### III. ANALYSIS

Before addressing each Defendant's motion to dismiss, the court first considers Plaintiff's motions to strike portions of Sheriff Hale and Davis' reply briefs because they purportedly raise new arguments not formerly presented in the motions to dismiss. Docs. 70, 71. Specifically, Plaintiff argues that Davis' motion did not address the subjective awareness prong of the deliberate indifference claim relating to Plaintiff's staph infection, but instead, she raised the argument for the first time in reply. Doc. 70 ¶ 2. The court disagrees because Davis broadly contends in her motion that she was subjectively unaware of any serious medical condition as "medical care at the Jail was handled and controlled by people other than Deputy Davis." Doc. 64-1, at 9.

Plaintiff also asserts that Sheriff Hale raised new arguments pertaining to sovereign immunity under the ADA and his receipt of federal funding under the Rehabilitation Act. Doc. 71. First, regarding the ADA issue, the court disagrees

with Plaintiff and agrees with Sheriff Hale that his reply brief specifically refutes arguments made in Plaintiff's response brief.  *See* doc. 72, at 2.  Plaintiff argued in his response that Sheriff Hale simultaneously violated the Fourteenth Amendment and the ADA, *see* doc. 65, at 3-4, and Sheriff Hale replied with arguments that he did not commit Fourteenth Amendment violations.  Doc. 68, at 3-5. Second, regarding the purported new arguments pertaining to the receipt of federal funding, doc. 71 ¶ 4, the court also disagrees with Plaintiff.  Sheriff Hale moved to dismiss the Rehabilitation Act claim because Plaintiff failed to demonstrate that Sheriff Hale received federal financial assistance.  Doc. 63-1, at 7.  Plaintiff responded that it is at least plausible that Sheriff Hale receives federal funding.  Doc. 65, at 5. Sheriff Hale replied with statutory language in an (unsuccessful, *see infra*) attempt to show that such receipt of federal funds is not actually plausible.  Doc. 68, at 6. This argument is not new, but properly replies to Plaintiff's response.

In short, the court agrees with Sheriff Hale and Davis that their reply briefs do not raise new arguments but rather extend arguments previously made or refute arguments Plaintiff made in his response briefs.  Therefore, Plaintiff's motions to strike are **DENIED**.

A.   **Sheriff Hale**

   *1. Claim for Money Damages under § 1983*[1]

   Plaintiff brings this claim for monetary damages against Sheriff Hale in his official capacity.  Doc. 55 ¶¶ 42-49.  Sheriff Hale correctly argues that he is protected by sovereign immunity from Plaintiff's § 1983 claims for money damages.  Doc. 63-1, at 4.   The law is well settled that "Alabama sheriffs, when executing their law enforcement duties, represent the State of Alabama, not their counties."  *McMillian v. Monroe Cnty., Ala.*, 520 U.S. 781, 793 (1997).  As an arm of the state, Sheriff Hale is entitled to Eleventh Amendment immunity from Plaintiff's § 1983 claims against him in his official capacity.  *Taylor v. Adams*, 221 F.3d 1254, 1256 (11th Cir. 2000) ("In their official capacity . . . Alabama sheriffs operating jails are state officers protected by Eleventh Amendment immunity."). *See* Article I, § 14, Alabama Constitution of 1901 ("the State of Alabama shall never be made a defendant in any court of law or equity"); *Lancaster v. Monroe Cnty., Ala.*, 116 F.3d 1419, 1429 (11th Cir. 1997) ("[A] state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity."); *Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (noting that Alabama has not waived its Eleventh Amendment immunity and that

---

   [1] Although Count II, doc. 55 ¶¶ 42-49, does not specifically cite § 1983 as the grounds for relief, the court infers that Plaintiff pleads his Fourteenth Amendment allegations in Count II under § 1983 which creates a cause of action against persons who violate the Constitution while acting under color of state law.  *See* doc. 55 ¶ 1 (citing 42 U.S.C. § 1983 as grounds for this action).

Congress had not abrogated such immunity in § 1983 cases).  Therefore, the court **GRANTS**, with prejudice, Sheriff Hale's motion to dismiss the § 1983 claim for money damages against him in his official capacity.

   *2. Claim for Money Damages under Title II of the ADA*

   Sheriff Hale argues that he also possesses sovereign immunity for Plaintiff's claim under Title II of the ADA because "Plaintiff has not carried the burden of showing that Title II of the ADA abrogated Sheriff Hale's sovereign immunity." Doc. 63-1, at 4.  The court disagrees.

   As announced by the Supreme Court in *United States v. Georgia*, 546 U.S. 151, 153 (2006), "Title II of the ADA provides that 'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.'" *Id.* (citing 42 U.S.C. § 12132). Moreover, Title II "provides that '[a] State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in [a] Federal or State court of competent jurisdiction for a violation of this chapter.'" *Id.* at 154 (citing 42 U.S.C. § 12202).  In interpreting this provision that abrogates Eleventh Amendment immunity, the Court found that "insofar as Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." *Id.* at 159.

   To aid district courts in applying the *Georgia* standard, the Court established

that the district courts should determine on a claim-by-claim basis "(1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid." *Id. See also Miller v. King*, 449 F.3d 1149, 1151 (11th Cir. 2006) (adopting this framework).

Therefore, assuming that a plaintiff sufficiently states a claim under Title II of the ADA, the Court provided two scenarios regarding the abrogation of sovereign immunity. First, a situation where plaintiff alleges conduct prescribed by Title II that "simultaneously violates a constitutional guarantee protected by the Fourteenth Amendment." *Nat'l Ass'n of Bds. of Pharm. v. Bd. of Regents*, 633 F.3d 1297, 1304 (11th Cir. 2011). In this situation, a defendant's claim of sovereign immunity is rejected as a matter of law. *See id.* The second situation occurs when a plaintiff pleads conduct that violates Title II but does not rise to a constitutional violation. *See Georgia*, 546 U.S. at 159. In this situation, "the third prong of the *Georgia* analysis requires the court to consider the *City of Boerne* tripartite congruence and proportionality inquiry to determine whether abrogation in this case would be deemed a valid exercise of Congressional power under § 5 of the Fourteenth Amendment." *Andino v. Fischer*, 698 F. Supp. 2d 362, 377 (S.D.N.Y. 2010).

In the current case, Sheriff Hale contends that the first scenario provided by

*Georgia* does not apply because he "is immune to Plaintiff's money damages claims for alleged violations of the Fourteenth Amendment.  That means that Sheriff Hale's conduct *cannot constitute* a Fourteenth Amendment violation which would fit within the abrogation window established by" *Georgia*.  Doc. 63-1, at 6 (emphasis added).  Stated simply, Sheriff Hale asserts that because he is immune from money damages under § 1983, Plaintiff cannot demonstrate that Sheriff Hale violated the Fourteenth Amendment - as required by *Georgia*'s categorical abrogation of sovereign immunity.

Sheriff Hale overlooks, however, that sovereign immunity from constitutional violations applies *only* to suits for money damages under § 1983. Sheriff Hale is not immune, for example, from injunctive relief under § 1983 for constitutional violations.  *See Ex Parte Young*, 209 U.S. 123 (1909).  Indeed, the Eleventh Amendment's concept of sovereign immunity is premised on the balance of federal power, not that arms of the state are *incapable* of violating the Fourteenth Amendment.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65-66 (1989) (finding that Congress enacted § 1983 to provide a federal forum for the deprivation of civil liberties by those acting under the color of state law, but "that Congress, in passing § 1983, had no intention to disturb the States' Eleventh Amendment immunity and so to alter the federal-state balance").  Significantly, when seeking injunctive or declaratory relief under *Ex Parte Young*, the legal theory is that a state action, in violation of the Constitution, cannot withstand the Supremacy Clause.  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102-

03 (1984).  "Since the State could not authorize the [unconstitutional] action, the officer was 'stripped of his official or representative character and [was] subjected to the consequences of his official conduct.'" *Id.* at 102 (citing *Ex Parte Young*, 209 U.S. at 160) (alteration in original)).  Therefore, a state official may be stopped from unconstitutional behavior because, regardless of the Eleventh Amendment, state officials - acting in their "official capacity" - can violate the Constitution.

The *Georgia* test to abrogate sovereign immunity for money damages under Title II of the ADA simply asks whether a constitutional violation occurred.  On the other hand, an official's right to sovereign immunity from money damages under § 1983 does not reach the constitutional question.  Accordingly, Sheriff Hale is not automatically immune from money damages under Title II merely because he is entitled to immunity from money damages under § 1983.

The court next considers the gravamen of the *Georgia* test: whether Sheriff Hale's conduct, as alleged by Plaintiff, i.e., failure to provide adequate medical care, simultaneously violated Title II of the ADA and the Fourteenth Amendment. The court finds that at the motion to dismiss phase of litigation, Plaintiff meets this burden.[2]  As an initial matter, the court notes that Sheriff Hale does not argue that Plaintiff failed to state a claim under Title II but merely asserts sovereign immunity from monetary damages.  Doc. 63-1, at 4-6; *see generally* doc. 68.  The court

---

[2] The case Sheriff Hale relies on, *Rylee v. Chapman*, No. 2:06-cv-0158-RWS, 2008 WL 3538559 (N.D. Ga. Aug. 11, 2008), is distinguishable because the court in *Rylee* did not find a sufficiently well plead constitutional violation.  *Id.* at *6, *10.

therefore finds that Plaintiff satisfied the first step of *Georgia* by stating a claim under Title II.  *See* doc. 55 ¶¶ 35-41.[3]  Moreover, the court finds that the factual allegations regarding Title II simultaneously allege violations of the Fourteenth Amendment.  *See* doc. 55 ¶¶ 42-49.

In support of his sovereign immunity argument, Sheriff Hale contends  that Plaintiff's allegations do not state an underlying Fourteenth Amendment violation. Doc. 68, at 3-5.  Sheriff Hale maintains that "Plaintiff identifies two allegedly problematic policies: that inmates could not be provided with opiates or methadone and that family members could not drop-off medication for inmates," and "these policies are facially constitutional." *Id.* at 4.  Without reaching the constitutionality[4] of these two specific policies, the court finds that Plaintiff's Amended Complaint sufficiently alleges practices and policies that violate a state detainee's Fourteenth Amendment right to adequate medical treatment.  *See* doc. 55 ¶¶ 24-31, 44-47.  Specifically, viewed in the light most favorable to the non-movant, Plaintiff asserts that Sheriff Hale's policies and "provision of health

---

[3] Specifically, Plaintiff claims that Sheriff Hale's "discriminatory administration and application of policies, practices and procedures includes those regarding the arrest, booking, confinement, and provision of health services to persons with disabilities." Doc. 55 ¶ 39. Plaintiff incorporates factual allegations regarding these practices, *see id.* ¶ 35, and asserts that such practices resulted in the denial of reasonable accommodations relating to medical and dietary needs.

[4] Both decisions cited by Sheriff Hale, *Nauroth v. S. Health Partners, Inc.*, No. 1:07-cv-539, 2009 WL 3063404 (S.D. Ohio Sept. 21, 2009) (decided after discovery); *United States v. Sharrak*, No. 09-20272, 2010 WL 4822889 (E.D. Mich Nov. 22, 2010) (not reaching the constitutional question), are not binding on this court and are distinguishable.  As such, the court finds that Plaintiff sufficiently states a claim against Sheriff Hale to merit the discovery process.

services" regarding the "medically appropriate treatment for ongoing and repeated seizures once Plaintiff had begun to experience seizures, and treatment of his festering staph infection" constituted deliberate indifference and violated the constitutional right to adequate medical care while in custody.  *Id.* ¶ 45.  Moreover, Plaintiff alleges that such deliberate indifference and inadequate training policies occurred "despite a pattern of constitutional violations or such a high likelihood of a constitutional violation that the need to train should have been obvious."  *Id.* ¶ 44.  Such allegations are satisfactory under the *Iqbal* standard.  *See Estelle v. Gamble*, 429 U.S. 97, 104-05 (1979) (holding that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain . . . proscribed by the Eighth Amendment") (citations and quotations marks omitted).  *See also Lancaster*, 116 F.3d at 1425 n.6 ("We have held that the minimum standard for providing medical care to a pre-trial detainee under the Fourteenth Amendment is the same as the minimum standard required by the Eighth Amendment for a convicted prisoner; both the right to due process and the right to be free from cruel and unusual punishment are violated by a government official's deliberate indifference to serious medical needs.").

A Fourteenth Amendment claim for "deliberate indifference" to a detainee's medical needs requires an objective and subjective inquiry.  *Bozeman v. Orum*, 422 F.3d 1265, 1272 (11th Cir. 2005).  The objective inquiry - whether Plaintiff suffered a serious medical condition - is not refuted by Sheriff Hale.  *See* docs. 63-1; 68.  Sheriff Hale argues instead that Plaintiff fails to satisfy the subjective prong,

15

doc. 68, at 4-5, which requires a showing that Sheriff Hale made a deliberate or conscious choice to be "indifferent."  In other words, Plaintiff needs to show that Sheriff Hale was on notice of the constitutional inadequacy of the current medical care for Jefferson County Jail detainees and failed to take reasonable steps to remedy such constitutional inadequacies.  *See Gold v. City of Miami*, 151 F.3d 1346, 1351 (11th Cir. 1998).  Contrary to Sheriff Hale's contention, Plaintiff has, in fact, met his burden by sufficiently alleging various inadequacies in Sheriff Hale's polices, including the failure to properly train, and that Sheriff Hale was on notice of previous constitutional violations regarding the provision of medical services to disabled individuals in the Jefferson County Jail.  Doc. 55 ¶ 44.

More importantly, the inadequate attention to serious medical needs giving rise to the alleged Fourteenth Amendment violation is also the conduct pertaining to the ADA violations.  Plaintiff asserts that the deliberate indifference to his medical conditions or disability constituted an act of discrimination, *see* doc. 55 ¶ 39, and as such, he meets the *Georgia* standard because he alleges an ADA violation that simultaneously violates the Constitution.  Accordingly, Sheriff Hale is not entitled to sovereign immunity for Plaintiff's claim under the ADA as it relates to Sheriff Hale's practices and policies in the Jefferson County Jail.  Sheriff Hale's motion to dismiss the ADA claim is therefore **DENIED**.

*3. Claim for Money Damages under Section 504 of the Rehabilitation Act*

Sheriff Hale contends that Plaintiff "does not specify any federal funding that would subject Sheriff Hale to Section 504 of the Rehabilitation Act."  Doc. 63-

1, at 7.  The Rehabilitation Act applies to "any program or activity receiving Federal financial assistance."  29 U.S.C. § 794.  A "program or activity" includes "a department, agency, special purpose district, or other instrumentality of a State or of a local government . . . any part of which is extended Federal financial assistance."  *Id.*

By asserting that Sheriff Hale is the recipient of federal funds, *see* doc. 55 ¶ 6, Plaintiff has plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 129 S. Ct. at 1949.  Taking all alleged facts as true, the court concludes - for purposes of this motion to dismiss - that Sheriff Hale is subject to damages for violations of the Rehabilitation Act.  Moreover, even after considering the Alabama statutory evidence regarding Sheriff Hale's funding, doc. 68, at 6-7, the court is not convinced that Plaintiff's factual allegation is implausible.  While Jefferson County may provide Sheriff Hale with reasonable funds, these statutes do not categorically demonstrate the full extent of funding and do not address whether Sheriff Hale receives *any* federal financial assistance.  As no other grounds to dismiss are asserted, the motion to dismiss the Rehabilitation Act claim for money damages is **DENIED**.

## B.    City of Hueytown

### 1. Claim for Money Damages under § 1983

Municipalities can "be sued directly under § 1983 for monetary . . . relief where, as here, the action that is alleged to be unconstitutional implements or

executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Social Servs. of City of N.Y.*, 436 U.S. 658, 690 (1978).  Moreover, a municipality may be sued "for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Id.* at 690-91.  A municipality is not subject to § 1983 liability based on a theory of respondeat superior for the actions of municipal employees. *Gold*, 151 F.3d at 1350.  Rather, a plaintiff "must identify a municipal policy or custom that caused [his] injury." *Id.* (citing *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397 (1997) (alteration in original)).  The "failure to train" municipal employees, such as police officers, may form the basis of a municipal policy or custom and corresponding liability under § 1983.  However, a failure to train allegation must be accompanied with "a deliberate or conscious choice" not to train municipal employees regarding potential constitutional violations. *Id.* at 1350-51.  Stated differently, "without notice of a need to train or supervise in a particular area, a municipality is not liable as a matter of law for any failure to train and supervise." *Id.* at 1351.  The notice requirement can be demonstrated by "a pattern of prior constitutional violations" or where the need to train is "so obvious" that the likelihood of constitutional violations is highly predictable. *Id.*

While the court is aware of the "high standard," *see id.* at 1351 n.10,  for municipality liability under a theory of deliberate indifference, the court finds that Plaintiff has met this burden at the motion to dismiss phase of litigation.  Taken in

18

the light most favorable to the non-movant, the Plaintiff alleges that the City of Hueytown's "custom or policy or failure to train includes the arrest and transfer/transportation of persons with disabilities . . . . This failure to train occurred despite a pattern of constitutional violations or such a high likelihood of a constitutional violation that the need to train should have been obvious." Doc. 55 ¶ 45.  Although the court agrees with the City of Hueytown that Plaintiff has not specifically provided other instances of conduct that would generate sufficient notice, *see* doc. 57, at 13-14, the Plaintiff is entitled to discovery on this issue as he has satisfied the Rule 8 pleading standard.[5]  The court is able to reasonably infer a potential constitutional violation arising from the City of Hueytown's alleged custom of denying adequate medical care during the custody, transport, and transfer of detainees. *See Iqbal*, 129 S. Ct. at 1949.

Moreover, at this stage in the litigation, the court is not persuaded by the City of Hueytown's reliance on *Young v. City of Augusta, Ga.*, 59 F.3d 1160, 1171 (11th Cir. 1995). *See* doc. 57, at 13-18.  The crux of *Young* turned on whether the city adequately selected or trained its employees to recognize when they needed to transport a detainee to a hospital. *Id.*  The court went on to discuss the different means of proving a "failure to train" claim, and concluded that a material factual

---

[5] The court notes that during discovery, Plaintiff should focus on specific instances of conduct that would give notice of reoccurring constitutional violations pertaining to the detainment and transfer of persons with disabilities.  The court is inclined to agree with the City of Hueytown that its customs or policies were not "so obvious[ly]" unconstitutional as to demonstrate sufficient notice absent proof of a pattern of prior constitutional violations. *See* doc. 57, at 14.

dispute existed as to the adequacy of the city's hiring customs.  *Id.* at 1173.  In the current case, Plaintiff states a cognizable claim that the City of Hueytown's custody, transport, and transferring customs do not provide constitutionally adequate medical care to detainees because the City fails to effectively communicate necessary medical information to the transferred facility.  As such, similar to *Young*, Plaintiff is at least entitled to discovery regarding these alleged customs.

Finally, the City of Hueytown argues that Plaintiff fails to state a claim because the confiscation of prescription medications is a facially constitutional practice.  However, the court is required to take all inferences in the light most favorable to the non-movant, and accordingly, the court must assume that "the basis of Plaintiff's claim is not the confiscation of his medications (a deprivation of property) but rather the denial of adequate medical care and the defendants' deliberate indifference to Plaintiff's medical needs."  Doc. 62, at 10 n.3.  Moreover, the court finds sufficient factual allegations against the City of Hueytown - not stemming from the confiscation of Plaintiff's prescription drugs - to state a claim for deliberate indifference.  Namely, that the City of Hueytown failed to give adequate medical care by not providing the Jefferson County Jail with proof of a transferee's entitlement to prescription medications even though the City of Hueytown possessed such proof.  *See* doc. 55 ¶ 17.  Therefore, the City of Hueytown's motion to dismiss the § 1983 claim for monetary damages is **DENIED**.

2.    *Claim for Money Damages under Title II of the ADA and Section 504 of the Rehabilitation Act*

The City of Hueytown addresses the ADA and Rehabilitation Act claims with the same analysis.[6]  Primarily, the City of Hueytown contends that its conduct did not proximately cause Plaintiff's injuries.  Doc. 57, at 23.  Instead it asserts that due to the subsequent "independent and separate" procedures of the Jefferson County Jail, *id.* at 27, "there is no indication from any factual allegation in the amended complaint that any action by the City to alert the Jail to plaintiff's medical needs would have made any difference in terms of plaintiff's access to medication during his incarceration."  *Id.* at 25.  The City of Hueytown argues that Plaintiff fails to set forth any injury proximately caused by the failure to accommodate Plaintiff with "access to medication during the short time he was in the City's custody, or from the City's alleged failure to ensure that the Jefferson County Jail was aware of any need for medication."  *Id.* at 27 (citing *Bircoll v. Miami-Dade Cnty.*, 480 F.3d 1072, 1088 (11th Cir. 2007) (affirming summary judgment for defendant on ADA and Rehabilitation claims because plaintiff failed to show injury due to any alleged failure to accommodate)).

The court **DENIES** the City of Hueytown's motion to dismiss the ADA and Rehabilitation claims because Plaintiff sufficiently alleges an injury proximately caused by the City's failure to reasonably accommodate his disability or modify its

---

[6] The court accepts grouping these claims together for this motion.  *See Cash v. Smith*, 231 F.3d 1301, 1305 n.2 (11th Cir. 2000) (holding that "cases decided under the Rehabilitation Act are precedent for cases under the ADA, and vice-versa").

practices.  First, Plaintiff correctly distinguishes the current case from *Bircoll*, in which the Eleventh Circuit affirmed summary judgment because plaintiff did not demonstrate *any* injury.  However, here, Plaintiff sufficiently alleges an injury - harm from seizures.  At this pre-evidentiary stage in the litigation, the court cannot determine as a matter of law whether the City of Hueytown's alleged conduct of denying reasonable accommodations, even for a short period of time, proximately caused such injury.  Moreover, prior to discovery, the court cannot conclude as a matter of law that the ADA and Rehabilitation claims fail because "law enforcement officials have obvious and legitimate interests in protecting themselves and the persons in their custody by controlling access to dangerous medications."  Doc. 57, at 23.  While the City of Hueytown may subsequently demonstrate that Plaintiff's requested modifications are unreasonable and raise legitimate safety concerns, at this juncture, the court finds that Plaintiff sufficiently states ADA and Rehabilitation Act claims pertaining to the need for the City to adopt reasonable accommodations/modifications of policies for the arrest, custody, transport, and transfer of qualified individuals with high propensities for violent seizures.

## C.    Cynthia Davis

Davis moves to dismiss, on qualified immunity grounds, Plaintiff's § 1983 claim for money damages against Davis, in her individual capacity, for violating Plaintiff's Fourteenth Amendment rights by "deliberate indifferen[ce] to his serious

medical needs."  Doc. 55 ¶ 45.[7]  "Qualified immunity operates 'to ensure that

before they are subjected to suit, officers are on notice their conduct is unlawful.'"

*Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (citing *Saucier v. Katz*, 533 U.S. 194,

206 (2001)).  Therefore, "[g]overnment officials performing discretionary functions

are entitled to qualified immunity 'insofar as their conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person would

have known.'" *Lancaster*, 116 F.3d at 1424 (citing *Harlow v. Fitzgerald*, 457 U.S.

800, 818 (1982)).  Indeed, corrections officers are entitled to qualified immunity

unless the "supposedly wrongful act was already established to such a high decree

that every objectively reasonable official standing in the defendant's place would

be on notice that what the defendant official was doing would be clearly unlawful

given the circumstances."  *Bozeman*, 422 F.3d at 1273 (internal quotation marks

and citations omitted).

Because there is no dispute that Davis was engaged in a discretionary

function, *see* doc. 64-1, at 6; doc. 66, at 6, the court must determine the "clearly

established law" at the time in question and whether Plaintiff sufficiently alleges

_____

[7] At the onset, the court rejects Davis' causation argument.  Doc. 64-1, at 10-12.  Plaintiff
alleges that, due to Davis' deliberate indifference, he "did not receive appropriate medical
treatment for his condition."  *See* doc. 55 ¶¶ 25, 27, 28, 30.  The court is satisfied that, if taken as
true, these contentions sufficiently establish causation.  Davis maintains that she did not establish
the policies regarding medical treatment of detainees and that she was not in a position to provide
Plaintiff with medical treatment.  Doc. 64-1, at 10-12.  However, Plaintiff's allegations stem
from Davis' failure to *obtain* medical treatment for Plaintiff, not to provide Plaintiff with that
treatment.  Therefore, Plaintiff's allegations, taken as true, demonstrate that Davis was a direct
factor in his injuries.

that Davis violated such law.  *See Pearson v. Callahan*, 555 U.S. 223, 241-42 (2009); *Lancaster*, 116 F.3d at 1424.

      1.     *"Clearly Established Law" for Deliberate Indifference to a Serious Medical Need*

      The Eleventh Circuit recognizes "three sources of law that would put a government official on notice of statutory or constitutional rights: specific statutory or constitutional provisions; principals of law enunciated in relevant decisions; and factually similar cases already decided by state and federal courts in the relevant jurisdiction."  *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1330 (11th Cir. 2007).  For Davis' alleged conduct, the relevant source of law to determine notice is factually similar cases decided in the relevant jurisdiction.  Yet, the Supreme Court made clear in *Hope* that the phrase "factually similar cases" does not necessarily require the exact same fact pattern, and "officials can still be on notice that their conduct violates established law even in novel factual circumstances."  536 U.S. at 741.  Indeed, "the salient question . . . is whether the state of the law . . . gave [Davis] fair warning that [her] alleged treatment . . . was unconstitutional."  *Id.*

      Plaintiff asserts a Fourteenth Amendment violation[8] arguing that Davis was deliberately indifferent to his serious medical needs during his eleven day detention in the Jefferson County Jail.  Doc. 55 ¶¶ 22-31, 45.  To prevail on this claim, "'[f]irst, the plaintiff must prove an objectively serious medical need.  Second, the

---

      [8] The deliberate indifference standard for "those incarcerated or in detention is the same under both the Eighth and Fourteenth Amendments."  *Bozeman*, 422 F.3d at 1272 n.13 (citing *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1024 n.5 (11th Cir. 2011) (en banc)).

plaintiff must prove that the prison official acted with deliberate indifference to that need.'" *Bozeman*, 422 F.3d at 1272 (citing *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004)).  Moreover, the clearly established law further provides that a "medical need that is serious enough to satisfy the objective component 'is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Goebert*, 510 F.3d at 1326 (citations omitted).  Finally, in addition to proving an objective medical need, Plaintiff must also satisfy a subjective inquiry. Specifically, the subjective prong for deliberate indifference requires Plaintiff to prove three things: "'(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence.'" *Id.* at 1327 (citing *Bozeman*, 422 F.3d at 1272 (alternation in original)).[9]

As it relates to the medical condition here, the *Lancaster* case specifically addressed deliberate indifference claims for detainees suffering from grand mal seizures.  116 F.3d 1419.  The *Lancaster* court provided that "a sheriff and his jail

---

[9] The court agrees with Davis that Plaintiff failed to provide any clearly established law regarding the alleged deliberate indifference toward the treatment of Plaintiff's staph infection. *See* doc. 64-1, at 4; doc. 69, at 3-5.  Plaintiff's response to Davis' motion to dismiss focuses exclusively on the clearly established law regarding gran mal seizures.  *See generally* doc. 66. Moreover, Plaintiff certainly failed to meet the subjective prong of a deliberate indifference claim for the staph infection issue.  In the staph infection allegations, Plaintiff merely asserts that Davis "observed his condition." Doc. 55 ¶ 31.  Plaintiff does not allege sufficient factual allegations that Davis even knew about the staph infection or that she disregarded a known risk in an act that amounted to more than gross negligence.  Therefore, the court limits the factual context of Plaintiff's deliberate indifference claim against Davis to the seizures and the effects of such.

officials acted with deliberate indifference by refusing to obtain medical treatment for a chronic alcoholic suffering from withdrawal." *Id.* at 1426 (citing *Fielder v. Bosshard*, 590 F.2d 105, 107-08 (5th Cir. 1979)).  Indeed, "a jail official who is aware of but ignores the dangers of acute alcohol withdrawal and waits for a manifest emergency before obtaining medical care is deliberately indifferent to the inmate's constitutional rights." *Id.*  Therefore, the court concluded that if defendants knew that plaintiff's "medical condition was either life threatening or urgent and would be significantly exacerbated by delaying treatment until after the first [gran mal] seizure, then they should have known that their decision to withhold treatment until [plaintiff] experienced a seizure amounted to deliberate indifference." *Id.* at 1425.

2.   *Plaintiff Sufficiently Alleges that Davis Did Violate the Clearly Established Law*

Turning now to the facts here, the court notes that Davis does not refute the objective prong - i.e. that Plaintiff suffered from gran mal seizures, a serious medical condition.  And indeed, the law is clearly established in *Lancaster* that the occurrence of gran mal seizures is in fact a serious medical need.  Rather, Davis bases her qualified immunity argument on the subjective prong - that she did not know of the risk of serious harm.  *See* doc. 64-1, at 8-10.  At this stage in the litigation, the court is required to accept Plaintiff's factual allegations as true, *see Iqbal*, 129 S. Ct. at 1949, and as such, the court finds that Plaintiff satisfies the subjective prong of a "deliberate indifference" constitutional claim.  Plaintiff

26

alleges that Davis knew Plaintiff may suffer from uncontrollable seizures, doc. 55 ¶ 22; that Plaintiff did in fact experience gran mal seizures and Davis had knowledge of such, *id.* ¶ 25; that, nonetheless, Davis placed him in solitary confinement during the pendency of his seizures where he received no medication or medical attention, *id.* ¶¶ 27-28; and that during one such seizure, Davis "shackled [him] to a gurney," *id.* at 30.

These facts are sufficient to establish the "deliberate indifference" prong. Although Davis contends that she "cannot be responsible for the medical staff's knowledge about the consequences of not giving medication or a certain course of treatment," doc. 64-1, at 10, taking Plaintiff's allegations as true, it is reasonable to conclude that Davis knew of Plaintiff's seizure propensity because Plaintiff specifically warned Davis of such.  Doc. 55 ¶ 22.  Moreover, a reasonable person could conclude that placing Plaintiff in isolation or strapping Plaintiff to a gurney while Plaintiff experienced seizures - as opposed to seeking appropriate medical personnel - amounts to conduct surpassing gross negligence.  *See e.g.*, *Goebert*, 510 F.3d at 1327-29.

In sum, the court finds that there is clearly established law regarding deliberate indifference toward detainees suffering from gran mal seizures. Moreover, the court finds that Plaintiff sufficiently alleges that Davis violated this clearly established law.  Therefore, Davis' motion to dismiss for reasons of qualified immunity is **DENIED**.

27

D.     **Brent Akin**

Conversely, the court finds that Akin is entitled to qualified immunity.[10]

Unlike the factual allegations against Davis, Plaintiff fails to sufficiently plead that

Akin violated a "clearly established" substantive due process right.  The parties

agree that Akin was performing a discretionary function during the events in

question; accordingly, as stated *supra*, to abrogate qualified immunity, Plaintiff

must demonstrate that the "supposedly wrongful act was already established to

such a high decree that every objectively reasonable official standing in the

defendant's place would be on notice that what the defendant official was doing

would be clearly unlawful given the circumstances."  *Bozeman*, 422 F.3d at 1273.

The court simply cannot conclude that a reasonable officer would know that Akin's

alleged conduct constituted deliberate indifference to a serious medical need.

Akin's alleged indifference derives from his knowledge of the potential

consequences of withholding Plaintiff's medications and his failure to

communicate Plaintiff's serious medical condition to the Jefferson County Jail.

Doc. 55 ¶¶ 17-18.  The court finds no "general constitutional rule already identified

─────────────────

[10] The court notes that the standard for qualified immunity differs from the 12(b)(6) standard to state a claim.  To eliminate qualified immunity, the plaintiff must go beyond stating an alleged constitutional violation and must demonstrate that such violation was "clearly established" by the law.  *See Bozeman*, 422 F.3d at 1273.  Significantly, this leads to the result here where the court denies the motion to dismiss the claims against the City of Hueytown, but grants the motion to dismiss the claims against Akin - even though they are based on essentially the same factual allegations.  The court finds that Plaintiff at least states a cognizable claim that the City of Hueytown violated the Constitution by failing to adequately train its officers; however, the court cannot find any action by Akin violated a constitutional right that is *clearly established by the law*.

28

in the decisional law [applicable] with obvious clarity to the specific conduct in question." *Goebert*, 510 F.3d at 1330 (citations omitted).  Plaintiff argues that the general statement of law - "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment," *Goebert*, 510 F.3d at 1330 - is applicable.  Doc. 62, at 20. However, the *Goebert* court continues by stating that the "more general the statement of law is that puts the official on notice, the more egregious the violation must be before we will find that the official is not entitled to qualified immunity." 510 F.3d at 1330.  Akin's alleged conduct is not so egregious that a reasonable officer would have been on notice of its unconstitutionality based on "general statements" of law.  Therefore, consideration of the specific case law is necessary to ascertain whether there exists any clearly established law.

Plaintiff first attempts to compare the alleged facts with *Brown v. Johnson*, 387 F.3d 1344.[11]  While *Brown* may generate clearly established law for a prison doctor or medical administrator, it does not do so for an arresting police officer, such as Akin.  In *Brown* the court determined that the plaintiff could state a claim for deliberate indifference based on a prison doctor and medical administrator's decision to "completely withdr[a]w the prescribed treatment for [plaintiff's]

---

[11] In his response brief, doc. 62, Plaintiff also cites a litany of non-binding federal case law.  However, "[o]ur court looks only to binding precedent - cases from the United States Supreme Court, the Eleventh Circuit, and the highest court of the state under which the claim arose - to determine whether the right in question was clearly established at the time of the violation." *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011).

illness." *Id.* at 1351.  Because the law established in *Brown* pertains to the medical decisions of medical officials, not lay police officers, Plaintiff fails to demonstrate that *Brown* provides clearly established law putting a lay police officer on reasonable notice regarding the administration of prescription medication.

Plaintiff also cites *Lancaster*, 116 F.3d 1419, as providing clearly established law for Akin's conduct.  Doc. 62, at 24.  However, unlike Davis' conduct at the Jefferson County Jail, Akin's actions are not clearly governed by *Lancaster*.  The *Lancaster* court does not provide that being told about the potential for seizures equates deliberate indifference to serious medical needs; rather, after being told about such seizures, "a total failure to obtain medical treatment" or "an unreasonable delay" in obtaining treatment constitutes deliberate indifference.  *See* 116 F.3d at 1426-29.  As discussed *supra*, Plaintiff alleges that during his seizures in the Jefferson County Jail, Davis placed him in isolation and used physical restraints without attempting to obtain medical personnel.  Such allegations are sufficient to violate *Lancaster*'s clearly established law.  Yet, Plaintiff alleges that Akin merely withheld Plaintiff's medications for a short period of time during transport and failed to communicate to the Jefferson County Jail Plaintiff's need for these medications - even though the Jefferson County Jail has its own medical intake procedures.  Doc. 55 ¶¶ 17-18.  *Lancaster* does not give notice to Akin, or a reasonable officer, that such actions clearly violate the law.  Rather, *Lancaster* provides only that jail officials should take reasonable steps to ensure that adequate medical care is given to detainees who imminently face or are currently

experiencing life-threatening seizures.  Akin's alleged conduct is simply consistent with this standard.

Finally, Plaintiff claims that Akin violated the law established by *Goebert v. Lee County*, that when considering the "more than gross negligence" aspect of a deliberate indifference claim, district courts should focus on "the delay in providing medical care, rather than the type of medical care provided."   510 F.3d at 1327.  The *Goebert* court found that the defendant's conscious decision to "automatically disbelieve[] any medical complaint by an inmate" delayed treatment to such an extent that the actions amounted to deliberate indifference.  *Id.* at 1327-29.  Plaintiff's reliance on *Goebert* is misplaced because the defendant in *Goebert* was the jail's facility commander and liaison for detainees requesting medical attention.  This official intentionally ignored plaintiff's repeated demands for immediate medical attention concerning leaked amniotic fluid and the possible still-birth of her child.  This "willful blindness" created a situation of deliberate indifference because it unreasonably delayed medical treatment.  *Id.* at 1328-29.  The *Goebert* defendant had full discretion regarding whether to seek medical assistance for the detainees and his automatic disbelief of their medical requests "smack[ed] of deliberate indifference."  *Id.* at 1328.

However, here, the facts are distinguishable.  As alleged by Plaintiff, Akin delayed treatment because he "failed to ensure that those responsible for transporting/transferring Plaintiff and booking him into Jefferson County Jail were aware of Plaintiff's numerous disabilities and his corresponding need for his

31

prescription medications." Doc. 55 ¶ 17. Even if true, *Goebert* simply does not

provide notice that an *arresting* officer clearly violates the Constitution by

engaging in the conduct at issue here, especially when, as alleged by Plaintiff, the

secondary prison utilized separate medical intake procedures. Doc. 55 ¶¶ 17-18.

Therefore, Akin's motion to dismiss is **GRANTED.**

## F.   Plaintiff Lacks Standing to Bring a Claim for Declaratory or Injunctive Relief

Beyond money damages, Plaintiff seeks a declaratory judgment that the

"policies, practices, procedures, conditions and customs of Defendants" violate

"the Fourth, Eighth, and Fourteenth Amendments of the U.S. Constitution, Title II

of the ADA, and Section 504 of the Rehabilitation Act," and Plaintiff also demands

that the court grant injunctive relief preventing Defendants from continuing such

alleged violations.[12] Doc. 55, at 17. Defendants contend that Plaintiff lacks the

requisite standing to obtain this prospective declaratory and injunctive relief, *see*

*e.g.*, doc. 63, at 8, and the court agrees.

A plaintiff seeking "to invoke the jurisdiction of the federal courts must

satisfy the threshold requirement imposed by Article III of the Constitution by

alleging an actual case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95,

---

[12] Plaintiff neglects to specifically provide against whom he seeks injunctive relief and not all named Defendants refute Plaintiff's standing to raise injunctive relief. However, based on the foregoing reasons, Plaintiff lacks standing to assert injunctive relief against any of the named Defendants. *See Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1242 (11th Cir. 2003) (holding that standing "implicates subject matter jurisdiction, and accordingly must be addressed as a threshold matter regardless of whether it is raised by the parties").

101 (1983) (citing *Flast v. Cohen*, 392 U.S. 83, 94-101 (1968); *Jenkins v. McKeithen*, 395 U.S. 411, 421-25 (1969)).  To demonstrate such case or controversy, the plaintiff must assert a "'personal stake in the outcome' in order to 'assure the concrete adverseness which sharpens the presentation of issues' necessary for the proper resolution of constitutional questions."  *Id.* (citing *Baker v. Carr*, 369 U.S. 186, 204 (1962)).  The case or controversy requirement is not met when the plaintiff merely alleges an abstract injury.  "The plaintiff must show that he 'has sustained *or is immediately in danger of sustaining some direct injury*' as the result of the challenged official conduct and the injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'"  *Id.* at 101-02 (emphasis added) (citations omitted).  Significantly, with regards to injunctive relief, "'past exposure to illegal conduct does not in itself show a present case or controversy . . . if unaccompanied by any continuing, present adverse effects.'"  *Id.* at 102 (citing *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974)).

Moreover, arising from the Article III case or controversy standard is the "general rule" that "a prisoner's transfer or release from jail moots his individual claim for declaratory and injunctive relief."[13]  *McKinnon v. Talladega Cnty., Ala.*,

---

[13] Many of the Eleventh Circuit cases considering this issue phrased their analysis in terms of "mootness" as opposed to "standing."  In these cases, the plaintiff initiated the lawsuit while still confined, but the action became moot when the plaintiff was released from confinement.  *See e.g.*, *McKinnon*, 745 F.2d at 1363.  In the current case, the proper terminology is standing because the court addresses whether Plaintiff can seek prospective relief, not whether Plaintiff's case or controversy has become moot.  *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 170 (2000).  However, these "mootness" cases are dispositive because the Eleventh Circuit is still analyzing the presence of an actual "case or controversy."  *See Sears v.*

745 F.2d 1360, 1363 (11th Cir. 1984) (finding plaintiff's claims for prospective

declaratory and injunctive relief regarding the allegedly unconstitutional conditions

of the Talladega County jail moot in light of plaintiff's transfer from such jail);

*Zatler v. Wainwright*, 802 F.2d 397 (11th Cir. 1986) (dismissing as moot plaintiff's

claims for prospective declaratory and injunctive relief regarding the Department of

Corrections' failure to keep him safe from violent inmate attacks because of

plaintiff's release from prison); *Spears v. Thigpen*, 846 F.2d 1327 (11th Cir. 1988)

(finding that, absent class certification, plaintiff's claims challenging the

correctional facilities conditions and seeking "'injunctive and declaratory relief in a

section 1983 action fail[ed] to present a case or controversy once the inmate has

been transferred'") (citing *Wahl v. McIver*, 773 F.2d 1169, 1173 (11th Cir. 1985)).

The underlying rationale of this general rule is that past prisoners cannot

demonstrate a real and immediate threat of returning to such confinement and thus

returning to the corresponding illegal conditions.  *See Lyons*, 461 U.S. at 102-03

(citing *O'Shea*, 414 U.S. at 495-97).  The court must assume that plaintiffs "'will

conduct their activities within the law and so avoid prosecution and conviction as

well as exposure to the challenged course of conduct said to be followed by

[defendants].'" *Id.* at 103 (citing *O'Shea*, 414 U.S. at 497).  Moreover, even if there

are strong allegations of wrongful behavior in correctional facilities, the alleged

behavior cannot form the basis of a case or controversy seeking prospective relief

---

*Thigpen*, 846 F.2d 1327, 1328 (11th Cir. 1988).

34

when there is no immediate threat to the non-prisoner plaintiff.  Furthermore, mere statements that a plaintiff will be "re-arrested" are purely hypothetical, and to find otherwise, would require the court to engage in speculation that is "insufficient to establish the existence of a present, live controversy" as required by Article III.  *Id.* at 104 (citing *Ashcroft v. Mattis*, 431 U.S. 171, 172-73 (1977)).

In the current case, Plaintiff bases his right to injunctive relief on the "probability that he will be jailed in the future and denied reasonable accommodation and/or subject to deliberate indifference to his medical needs and that he will suffer injury as a result."  Doc. 65, at 8.  However, in an attempt to avoid the "general rule" that released prisoners do not have standing to seek injunctive relief against illegal prison conditions, Plaintiff cites to several Eleventh Circuit cases where the court "found that plaintiffs who may not be able to avoid encounters with law enforcement or subsequent incarceration may have standing to seek injunctive relief against threatened constitutional deprivations."  Doc. 65, at 8 (citing *Lynch v. Baxley*, 744 F.2d 1452 (11th Cir. 1984); *Church v. City of Huntsville*, 30 F.3d 1332 (11th Cir. 1994); *Bourgeois v. Peters*, 387 F.3d 1303 (11th Cir. 2004)).  Yet, all three cases are distinguishable, and Plaintiff does not present a live case or controversy to seek prospective injunctive or declaratory relief because Plaintiff only pleads conjectural and hypothetical threats of future imminent injury.

In *Lynch*, the court considered plaintiff's standing to enjoin the enforcement of Alabama's civil commitment procedures.  These procedures allowed the state to

detain persons in county jails while awaiting involuntary civil commitment

hearings.  744 F.2d at 1454.  The named plaintiff alleged several past detainments

and the court found standing to seek prospective injunctive relief because there was

"every indication that the named plaintiff could continue to be the subject of

involuntary commitment petitions and thereby subject to emergency detention."  *Id.*

at 1456-57.  Significantly however, the *Lynch* court distinguished its decision from

the *O'Shea* holding.  *See* 414 U.S. at 497.  The court noted:

> [Plaintiff's] situation is not like that of the named plaintiffs in
> *O'Shea* who were alleging that *if* they violated the law and *if* they
> were charged they would be subject to discriminatory practices.  In
> that case, the Court assumed that if the respondents conducted their
> activities within the law they would avoid prosecution and
> exposure to the alleged unconstitutional conduct. [Plaintiff] is at
> risk of being detained in jail not because of volitional acts on his
> part but because his mental condition would prompt his family, as
> it has done on two previous occasions, to petition for involuntary
> commitment.

*Id.* at 1457 n.7.

The case here is more analogous to *O'Shea* because Plaintiff faces future

incarceration, if at all, based on his own volition.  Plaintiff asserts that he

frequently carries prescribed narcotics outside of their prescription containers, and

this results "in a high likelihood that he will again be arrested and transported to

Jefferson County Jail for failing to present proof of prescription."  Doc. 65, at 10.

Plaintiff supports this contention regarding a "recurring pattern" of arrests, *id.* at 9,

by stating that he was convicted in 2009 for possession of a controlled substance

after "a Hueytown police officer pulled Plaintiff over and discovered that Plaintiff

36

had medications not in their prescription bottles on his person." Doc. 55 ¶ 13.

However, any potential for this "recurring pattern" derives from Plaintiff's

volitional actions. Plaintiff has a choice whether or not to carry his prescription

medicine outside of the prescription bottles, and the court must assume that

Plaintiff will chose the lawful option to avoid future arrest and detention. *See*

*Lyons*, 461 U.S. at 103.

Moreover, the facts alleged demonstrate that even if Plaintiff does choose to

carry his prescription medication outside of the prescription bottles, the likelihood

of a future arrest for such choice is entirely speculative. Plaintiff provides that

during the events leading to the detention in question, Plaintiff's daughter

successfully convinced the arresting office that "Plaintiff was in lawful possession

of the medications." Doc. 55 ¶ 16. Indeed, the officer arrested Plaintiff for driving

on a suspended license, not for possession of an illegal substance, and Plaintiff

does not contend that this arrest was illegal. *Id.* Therefore, assuming *arguendo*

that Plaintiff *is* acting in compliance with the law on those occasions when he

carries his medication outside of the prescription bottles, Plaintiff is at no risk of

future detention for such actions. The court will not assume that an individual will

choose to break the law, and absent allegations of such, the court will also not

assume that an individual is subject to arrest for legal behavior. Put simply,

Plaintiff is either arguing that under his own volition he chooses to act illegally or

that he is subject to a greater threat of arrest for legal actions. Both options are

outside of the *Lynch* precedent and too speculative for the court to find that

Plaintiff is "immediately in danger of sustaining some direct injury." *Lyons*, 461 U.S. at 101-02.

Similarly, in *Church*, the court granted plaintiffs standing to seek prospective relief based on the "involuntary nature of their condition." 30 F.3d at 1228. The *Church* plaintiffs, homeless residents of Huntsville, Alabama, alleged that Huntsville detained and arrested them in violation of their constitutional rights solely because of their status as homeless persons. *Id.* at 1334. The court accepted plaintiffs' argument that they were involuntarily homeless due to illness, unemployment, and lack of public shelters, *id.* at 1338; and therefore, could not "avoid future exposure to the challenged course of conduct in which the City allegedly engages." *Id.* (citations and internal quotation marks omitted).

As the case law shows, standing to assert prospective injunctive relief may be warranted "when, for reasons beyond the plaintiff's control, he or she is unable to avoid repeating the conduct that led to the original injury at the hands of the defendant." *Id.* However, here, the circumstances surrounding Plaintiff's injury were within his control. Plaintiff was arrested and detained for driving on a suspended license, doc. 55 ¶ 14, meaning that, unlike the plaintiffs in *Church*, Plaintiff can avoid repeating this illegal conduct. Indeed, Plaintiff does not claim that he is incapable of following the law; and as such, Plaintiff does not provide the court with any concrete imminent threat of injury to justify standing for prospective injunctive or declaratory relief.

Finally, Plaintiff attempts to utilize the "capable of repetition, yet evading

38

review" exception to the mootness doctrine provided by *Bourgeois v. Peters*, 387
F.3d at 1308.  However, this mootness exception is not available when the court is
analyzing standing.  *Friends of the Earth*, 528 U.S. at 191 (holding that "if a
plaintiff lacks standing at the time the action commences, the fact that the dispute is
capable of repetition yet evading review will not entitle the complainant to a
federal judicial forum").  Put differently, Plaintiff's claims regarding the conditions
of his confinement have yet to be litigated in his suit for damages; as such, "in no
sense do[] [those] claim[s] 'evade' review." *Lyons*, 461 U.S. at 109.

Even if the court did entertain a "capable of repetition, yet evading review"
analysis, Plaintiff fails to satisfy the requirement that there exists a "'reasonable
expectation that the same complaining party would be subjected to the same action
again.'" *Bourgeois*, 387 U.S. at 1308 (citing *Weinstein v. Bradford*, 423 U.S. 147,
149 (1975)).  As discussed *supra*, the court cannot assume that Plaintiff will
engage in future illegal conduct or that officers will arrest him unlawfully;
therefore, it is not "reasonable" to expect that Plaintiff will be "subjected to the
same action again." *Id.*

For all these reasons, the court **DISMISSES** with prejudice Plaintiff's claims
for injunctive and declaratory relief.  However, in dismissing Plaintiff's claims for
injunctive and declaratory relief, the court does not "suggest that such . . . claims
should not be taken seriously by local authorities." *Lyons*, 461 U.S. at 111.  As
provided by the Court in *Lyons*, "the interest of an alert and interested citizen is an
essential element of an effective and fair government . . . . A federal court,

39

however, is not the proper forum to press such claims unless the requirements for entry and the prerequisites for injunctive relief are satisfied." *Id.* at 111-12.

Done the 24th day of October, 2011.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE